Good morning. May it please the court. My name is Eitan Castellanich. I'm representing Kenneth Cornellier in this appeal. Cornellier has been unable to work since November 2013 as a result of the combined functional effects of his many impairments, primarily his impairments of major depressive disorder and anxiety disorder. Now, there are many errors in the ALJ's decision here, each of which by itself requires at least remand for a new hearing. And that's all we're asking for is remand for a new hearing because the ALJ never went beyond step four. But for starters, there were four examiners and two treatment providers, Dr. Wingate, Dr. Kenderdine, Mr. Price, and Dr. that essentially Cornellier had enough limitations that would prevent him from working. In addition, the ALJ rejected all of the evidence, all the opinions from these four individuals. And what the ALJ did was he was accepting parts of their opinion. They said, well, he's got mild limitations in certain ways. ALJ accepted that, but the ALJ didn't accept any of the marked or moderate limitations. And the ALJ did not state any legitimate reason for rejecting all of those more serious limitations. The opposing counsels suggest that many of the moderate limits that were identified by the doctors ended up being included in the RFC. Do you disagree with that? That, yes, I do disagree. The moderates did not all end up in the residual functional capacity assessment and the marked certainly did not. The, all of the. Excuse me, counsel. I wanted to know, does it make a difference in your view that the ALJ used the opinions of non-mental health specialists to discredit the examining doctor's opinions about your client's mental health? The reason it actually makes a difference, and this, I know what you're referring to here, the ALJ several times cited, provided a string site where you can basically search through the no acute distress, NAD, and you can just pull those out and say, well, look, here's 20 appointments where there's NAD. Okay. But the irony here is that all of the ones that the ALJ was pulling out there, first of all, that's not a real serious finding. That's just a standard thing. It's probably prefilled on all these. Second of all, the fact that you're not in acute distress at a medical appointment doesn't tell us anything. But the more important thing is that the mental health findings that you were citing from all of those reports, none of them were from mental health providers. So I think that does make a difference. I'm sorry, but I think you said something like a singular finding is not enough, but I'm looking at the record and it seems like pretty consistent that there were a lot of findings that indicated that the Mr. Cornelius was oriented to time and place, person, situation, appropriate mood and effect, normal insight, normal judgment, no suicidal ideation. Then on another one, there's no grandiosity, normal insight, normal judgment, no pressured speech, no suicidal ideation. Another one says no true paranoia, no disorganizing thoughts, negative self-talk, worrying negative opinions of others. I mean, it seems like it's smokable, not just one, right? Well, absolutely. There's multiple. The problem with what you're describing here is that on any mental health, mental status examination, you're going to describe 20 different things. And if 18 of those things are normal, that does not mean you're fine. And what the ALJ has has cherry-picked through the entire record, finding all of the comments that show that, yes, he wasn't having hallucinations that day. That doesn't tell us that he wasn't depressed. And I think what Judge Graber pointed to, which is correct, is that almost entirely, if not entirely, the treatment notes that the ALJ was pointing to were, he'd go in for just a treatment with an ARNP or a medical doctor. It wasn't mental health treatment. And on the other hand, when he did go to mental health providers, mental health therapists who were trained at detecting this stuff, they noted clinical findings which support his disability claim. But the ALJ disregarded all of the treatment notes that showed positive findings, only mentioning the ones that were not for mental health providers that showed negative findings. I think that kind of selective analysis is not acceptable. He's got to look at the whole record and base his decision on the entire record for ponderance of the evidence. Another error in the ALJ's decision involves his treatment or lack of treatment of the lay evidence. The ALJ simply does not evaluate any of the lay evidence. And while that could be harmless error, it's not harmless error here because all three lay witnesses, if you credit their opinions and their observations, I don't think that this court can confidently conclude that no reasonable ALJ who evaluated that evidence could have reached a different disability determination. So that's a harmful error in the ALJ completely failing to evaluate that evidence. The ALJ also made a significant error at step four. He only went to step four, and at step four he found that Cornelier could do his past relevant work, but the problem is that he could not do that work as it was actually performed because he'd been fired from it because he couldn't do the work. His work was substandard, and he couldn't do it as it is generally performed because the job he was doing was only one-third of an actual job. There's a three-part job. He was doing one of the three parts, and the vocational expert testified, well, he's the one who explained that. So what we've got here is the four medical opinions that were improperly rejected. Lay evidence was improperly rejected. Cornelier's testimony was improperly rejected, and the step four finding doesn't pass any kind of scrutiny if you're careful scrutiny. So based on all of this, I believe that the case should be remanded for a new hearing and give the ALJ an opportunity to comply with the law and weigh the evidence. If he's going to reject the opinions of examining physicians, he's got to come up with legitimate reasons. I have a question about the remedial request that you're making. Why would there have to be a whole new hearing as distinct from reconsideration of the evidence that's already been presented? Well, as a general rule, the appeals council always vacates an ALJ decision that has been reversed. And the reason there would have to be a new hearing is because years have now elapsed since the previous hearing, and an ALJ hearing the case would be required to decide the case through the date of his decision. So it's inevitable that they would have to reevaluate the evidence that's already in this file as well as any new evidence that is added to the file. Thank you. You have about a minute. Did you want to reserve some rebuttal time? Thank you. I would like to. Okay. That brings us then to Mr. Lankhamer. Thank you, Your Honor. Joseph Lankhamer on behalf of the commissioner. Cornelia asked the court to overturn almost all of the ALJ's factual findings about his disability case. But the court must affirm if the ALJ's findings are supported by more than a mere scintilla of evidence, that's the standard here. And here the ALJ pointed to evidence showing that Cornelia worked for years with some of the impairments he claims are now disabling, that treatment helped his symptoms, and as Judge Benitez pointed out, he often had intact mental functioning on these examinations. And several doctors... Excuse me. I'd like to ask you a little bit about that. We have a couple of cases, notably Garrison and Holohan, that caution that in the context of mental health issues that it is quite common for those issues to ebb and flow. And the fact that there's improvement at times is not necessarily a ground for concluding that a claimant can work. So how do you square those cases and those principles with your position? Your Honor points up that yes, in those instances, if a condition waxes and wanes and it doesn't actually, and there is not actually evidence of medication improving a person's symptoms, then yes, in those cases we have a different scenario. But here we have a longitudinal record that shows that Cornelia is receiving treatment. For example, in November 2014, Cornelia told Dr. Wingate that in the past medication, quote, seemed to help with his anxiety. Fast forward to early 2016, Cornelia said that he felt, quote, stable on his current medications. And the provider at that point said that he had only mild to moderate symptoms with good response to treatment in the past. And over the course of this treatment record, despite some depression and anxiety, there's no question that Cornelia has those impairments. We are also seeing mental functioning that is intact. For example, normal judgment, normal insight, no flight of ideas, no paranoia. And Cornelia this morning argued that these are not relevant, that none of these records are relevant because they weren't in the context of mental health treatment. That's inaccurate. If you look at these, yes. Some of the things that you reeled off are not necessarily symptoms of the actual impairments that he has. For example, a person with a major depressive disorder and anxiety isn't necessarily paranoid. And, you know, to say that he doesn't have other mental health problems doesn't seem to me to get us very far. So. Well, the evidence and I'm sorry, Your Honor, if I can wait for you to finish your question. No, it isn't really a question, but I'd like your thoughts on that topic. Absolutely. The the the medical records here are are important in in really two ways here with respect to Cornelia's subjective complaints. He's claiming that he sleeps 30 minutes a night, that he that he can't do anything because of his mental impairments, that he can't hold a job. He has extreme short term memory. These are things that he says he has problems remembering things for 10 seconds. That's on page 80 of the record. And when what the ALG does is he looks at those subjective complaints and he compares it to the overall record. The notes that I cited earlier about mild to moderate symptoms with good response to treatment, but feeling stable on his current medications, pairing that with with these medical records. And these are records where Cornelia sought treatment for his anxiety and for his depression. When you look at the records of pages 537, 541, contrary to Cornelia's position, those are relevant records. And while there is not a medical record, to Your Honor's point, I mean, we don't have we don't have medical records that say, you know, this this person's mental depression and anxiety are completely fine. He doesn't really have symptoms. There's no question he has symptoms. The ALG accounted for those impairments by including very, very sharp restrictions in this residual functional capacity, limiting Cornelia to just short, simple instructions, making simple decisions, few workplace changes, only occasional interactions with co-workers and no interaction with the public. These are very serious limitations that the ALG accounted for in assessing Cornelia's depression and anxiety. But the ALG also has records in this case that are showing that he has normal judgment, that he has normal insight. And in synthesizing these records, and as the court has pointed out in its rounds decision, that it's the ALG's duty to synthesize clinical findings into a succinct RFC, the ALG looked at these medical records and synthesized it into an RFC. And this case is more similar to the court's recent Ford decision. And in Ford, in this rejecting the claimant's challenge to medical opinions based on the ALG's assessment of medical evidence, the court, this court reiterated that that treatment records are an important consideration that the ALG is responsible for analyzing in assessing medical opinions. So in Ford, for example, the doctor thought that the claimant was highly distractible and her ability to concentrate was limited. But there were treatment records that showed that the claimant had normal thought processes, normal concentration, and the ALG took a look at these medical records and in carrying out the responsibility of assessing an RFC based on the overall record, synthesized those medical records and reasonably discounted the medical opinions that were inconsistent with those records. So... Does it matter that the opinions that were discounted were from people who were specialists in the areas of the impairments that the claimant has versus doctors who were not specialists in the areas in which his impairments exist? Specialty is one consideration under the regulations in analyzing a medical opinion. So if a medical, you know, if a doctor here, for example, Dr. Kenderdine and Dr. Wingate, those were psychological specialists, that is a consideration. But another consideration that the ALG must is whether or not the doctor's opinion actually aligns with the overall record. And again, I would draw the court's attention... Excuse me, excuse me. I don't think that there that that was something that the ALG said. I don't think the ALG said that these two, that the doctors who noted marked limitations were somehow inconsistent. He recognized that people had different opinions, but that's different than saying, you know, everybody read the radiography one way and only one person found a broken bone. It really is just a matter of picking one opinion over another. And it does... So I'm not really sure that that was the ALG's reasoning. Well, on page 29 through 30 of the ALG's assessment of, let's take Dr. Wingate and Dr. Kenderdine, the ALG, and I'm reading here on page 29, this is in assessing Dr. Wingate's opinion, less weight is given to her opinion that the claimant would have marked limitations in the other domains of functioning, as the record has noted a good therapeutic response to treatment and multiple normal mental status examinations. And then the court provides reference to the medical records and similar... Excuse me, but those are the ones that are provided by non-mental health specialists. And that, again, runs right into our Holohan and other decisions that say that improvement in a mental health setting isn't necessarily the your honor. While some of those records may have been, those are objective, those are treatment records that we're talking about. He was seeking, Cornelia was seeking treatment for his mental health. So the point is that, again, under the regulations and under this court's long line of precedent, most recently Ford, the ALG should be looking to determine whether or not a doctor's consideration, and the ALG recognized that these were psychologists. But regardless of specialty, the ALG is tasked with comparing the medical opinion with the treatment records and with the overall record. And that is what the ALG did here. I did want to also address, I see that I should have cited, for example, the opinion of Cornelia's sister. That would have been, the ALG should have done that. But under this court's Molina decision, the court has held that where lay witness testimony does not describe any limitations not already described by the claimant, the ALG's reasons for discounting the claimant's testimony can apply equally to the lay witness testimony. So I would refer the court to the Molina decision. And when you match what, for example, Cornelia's sister has described, it matches very closely with the symptoms that Cornelia is complaining about. For example, problems focusing, problems socializing. So the ALG's assessment of Cornelia's subjective complaints apply equally to those lay witness opinions. I do see my time is up, so I would conclude by asking that the court affirm the ALG's decision. Thank you, counsel. Mr. Yonich, you have a little bit of rebuttal time remaining. Thank you. I want to start by just mentioning that Mr. Lankhamer recited the substantial evidence legal standard but did not address legal error. Issues throughout this case involve ALJ committing legal error by failing to state legally valid reasons for rejecting several medical opinions. With regard to medical improvement, there's no evidence of medical improvement that was sustained and that was sufficient to allow him to return to work. There is similarly the fact that he was stable. That's a good thing. That's what mental health therapists aim for, strive for. Stable does not mean able to work. It does not necessarily mean that. With regard to some of the evidence here, Dwayne Price is a mental health treating therapist and he opined that based on his knowledge of Cornelia's problems, Cornelia had many issues that prevented him from working. And finally, with regard to the specialty being a consideration, I don't think ALJ did address that. I don't think the ALJ acknowledged that he was rejecting the opinions of both treating, examining psychologists, a treating physician who was, you know, who was treating him for the mental illness. So really, you know, I mean, he never, and obviously he never acknowledged that all of the treatment notes he was citing were from non-mental health people and that he was not addressing any of the positive findings from any of the treatment notes from any of the mental health treatment providers. With that, I would ask the court to reverse the ALJ's decision and remand this case for a new hearing. Thank you, counsel. The case just argued is submitted and we appreciate helpful arguments from both of you.
judges: Graber, Ikuta, Benitez